UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Criminal No.05-420 (EGS) |
| : | |
| v. : | |
| : | |
| BRYANT McCLAIN, : | |
|     defendant. : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Evidence and Statements. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

**I.      Factual Background**

The defendant is charged in a two count indictment charging Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year in violation of 18 U.S.C. § 922(g), and Simple Possession of a Controlled Substance in violation of 21 U.S.C. § 844(a).

At a hearing or trial in this matter, government counsel expects the evidence for these charges to demonstrate substantially as follows: on October 30, 2005 at approximately 2:50 p.m. officers of the Metropolitan Police Department were patrolling the 900 block of Decatur Street, N.W., which is an area known for the trafficking of illegal narcotics, when they observed the defendant crouching behind a white pickup truck. As the police vehicle came up along side of the white truck, the officers observed the defendant "peek" over the side of the truck, look at the officers, and then duck back down behind the truck. The officers then exited their vehicle to investigate why

the defendant was hiding behind the truck. As an officer approached Mr. McClain from behind he observed the defendant crouching down and placing a black handgun on the street in plain view near the truck's passenger-side front tire. The officer yelled "gun" to alert the other officers of the presence of the weapon. Hearing the warning, the defendant stood up and began running westbound in the 900 block of Decatur Street, N.W. The defendant was then chased on foot by the officers into the 1200 block of Decatur Street, N.W. where he was apprehended. The defendant was instructed by the officers to lay on the ground and put his hands out where the officers could see them. As he did so, the officers observed a clear glass bottle containing a liquid come out of the defendant's right hand.

The gun and bottle were recovered. The weapon was a loaded Taurus 9mm black handgun. It was test-fired and found to be operable. The liquid in the bottle field tested positive for the presence of PCP. As the officers were placing the defendant under arrest, and prior to the giving of any <u>Miranda</u> warnings, the defendant stated spontaneously that the "juice" was his, referring to the PCP.

In his Motion to Suppress Evidence and Statements the defendant asserts that his arrest was without probable cause or reasonable suspicion and therefore the evidence and statements must be suppressed. The defendant further asserts that his statements were made in violation of <u>Miranda</u> and were otherwise obtained involuntarily.

**II.**     **<u>Argument</u>**

    **A.**     **<u>The defendant does not have standing to challenge the seizure of the gun</u>**

"Fourth Amendment rights are personal rights which like other constitutional rights, may not be vicariously asserted." <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-34 (1978). The defendant has the

burden of establishing that he has a legitimate expectation of privacy in the area searched or a proprietary interest in the property seized.  United States v. Zablaga, 834 F.2d 1062, 1065 (D.C. Cir. 1987).  An individual forgoes, however, any expectation of privacy in property which he has abandoned.  See United States v. Wider, 951 F.2d 1283, 1285-86 (D.C. Cir. 1991).  Warrantless searches and seizures of such property are permissible.  See id.; see also Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Thomas, 864 F.2d 843, 845-46 (D.C. Cir. 1989).  Whether property has been abandoned does not turn on whether the abandoner retains a property interest in the property under state law, but instead on whether the defendant voluntarily yielded possession of the property in circumstances which are inconsistent with the retention of a reasonable expectation of privacy in the property.  See United States v. Most, 876 F.2d 191, 196-97 (D.C. Cir. 1989). Someone who leaves an object unattended in a public place or who discards evidence in anticipation of police seizure is generally treated as having abandoned it.  See id.; see also Wider, 951 F.2d at 1285-86 (D.C. Cir. 1991); United States v. Lewis, 921 F.2d 1295, 1302-03 (D.C. Cir. 1990). Where, however, the abandonment is the direct result of unlawful conduct by the police, the abandonment may be viewed as involuntary or as tainted by the unlawful seizure.  Lewis, 921 F.2d at 1302-03; Thomas, 864 F.2d at 845-46 (defendant abandoned gym bag containing weapons when, upon seeing police approach, he fled into an apartment and left gym bag in hallway on second floor).   The Supreme Court made clear in California v. Hodari D., however, that a fleeing suspect has not yet been seized, and thus property abandoned during the chase and prior to seizure cannot be tainted fruit.  California v. Hodari D., 499 U.S. 621, 629 (1991).

In this case, the defendant has made no assertion that he had any proprietary interest in the gun, and he plainly abandoned it when he placed it in plain view on the ground on a public street and

then ran away from it. See Most, 876 F.2d at196-97 (someone who leaves an object unattended in a public place has abandoned it); Thomas, 864 F.2d at 845-46 (defendant had abandoned a gym bag by leaving it at the top of the stairs in a public hallway).

Defendant, moreover, cannot be heard to argue that his abandonment of the gun was the result of unlawful police conduct. The officers' approach of the defendant to investigate why he was hiding behind the truck was entirely appropriate. It is well-established that police may make contact with citizens and investigate criminal activity without triggering the protections of the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 552 (1980). Only when police officers have restrained the liberty of an individual, by means of physical force or show of authority," is there a "seizure" within the meaning of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). Thus, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22. The test is whether "a reasonable person would have believed that he was not free to leave." Mendenhall, 446 U.S. at 544 (footnote omitted); accord Michigan v. Chesternut, 486 U.S. 567, 573 (1988).

In this case, the officers observed the defendant ducking down behind the white truck after the officers came into the block. As the police vehicle came up along side of the white truck, the officers observed the defendant "peek" over the side of the truck, look at the officers, and then duck down behind the truck. In response, the officers exited their vehicle to investigate. The officers engaged in no "show of authority" by merely approaching the defendant to inquire as to why he was hiding behind the truck. Therefore, there was no seizure of the defendant for Fourth Amendment purposes when the officers first approached him. His abandonment of the gun after seeing the police

approach relinquished any expectation of privacy he had in it. Thus, the Fourth Amendment is not even implicated by the police's recovery of the gun in this matter.

      **B.**    **The stop and arrest of the defendant, and recovery of the gun and drugs, was also  justified by probable cause**

When the officers approached the defendant they observed him engaging in conduct that gave rise to probable cause to effect his arrest and justified the warrantless seizure of both the gun and drugs in this case. It is axiomatic that the police may arrest someone without first obtaining an arrest warrant where the police have probable cause to believe that person is committing or has committed a criminal offense. Florida v. White, 526 U.S. 559, 565 (1999). Probable cause must be evaluated in terms of the totality of the circumstances, as viewed by a reasonable and prudent police officer in light of his or her training and experience, that would lead the officer to believe that a criminal offense had been or is being committed. See United States v. Green, 670 F.2d 1148, 1151 (D.C. Cir. 1981); Brinegar v. United States, 338 U.S. 160, 175 (1949). As stated above, the police had probable cause to believe that the defendant was in possession of a handgun, and therefore, had a sufficient justification to place him under arrest. Accordingly, the recovery of the gun and drugs observed in defendant's possession was justified as a valid warrantless search incident to a lawful arrest. See United States v. Robinson, 414 U.S. 218, 224 (1973); Chimel v. California, 395 U.S. 752, 763 (1969).

      **C.**    **Defendant's Statements are Admissible Against Him.**

As stated above, the defendant's arrest was lawful. Accordingly, there is no basis to suppress his statements as the fruit of an illegal arrest. The defendant further argues that any statements made by him were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), or otherwise made

involuntarily in violation of Lego v. Twomey, 404 U.S. 477, 489 (1972). Under Miranda, custodial interrogation automatically triggers numerous procedural safeguards to protect an individual's Fifth Amendment right against compulsory self-incrimination. As explained in Miranda, custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. The Court has stressed that these safeguards come into play only when the defendant is subject to both custody and interrogation. Rhode Island v. Innis, 446 U.S. 291, 297 (1980); Beckwith v. United States, 425 U.S. 341, 347 (1975). Thus, in the absence of either factor, Miranda safeguards do not apply.

At the time the defendant made the that the PCP was his he was not made in response to interrogation by the police. Rather, the defendant's statement was made spontaneously post-arrest. Therefore, the procedural safeguards of Miranda do not apply and the statement should be admitted.

Nor was his statement involuntary. A statement is voluntary for purpose of due process so long as the statement is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citing Columbe v. Connecticut, 367 U.S. 568, 602 (1961)). For a statement to be involuntary, it must have been caused by government overreaching. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986) ("[a]bsent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). There is no indication of such conduct in this case. Moreover, even if there were, there is no indication in this case that under the totality of the circumstances, Lego v. Twomey, 404 U.S. at 489 (government has burden of establishing under preponderance of the circumstances that the confession was voluntary), defendant's will was

overborne.  See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined").

In order to determine whether a statement was voluntarily made, the court must examine the totality of circumstances to determine whether an individual's "will has been overborne and his capacity for self-determination critically impaired."  Schneckloth v. Bustamonte, 412 U.S. at 225; Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation), cert. denied, 110 S. Ct. 573 (1989); United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067, 1072-73 (4th Cir. 1987) (FBI agent's assertion that would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary), cert. denied, 486 U.S. 1010 (1988).  Testimony at a pre-trial hearing in this case will demonstrate that the statements made by the defendant were voluntary.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO. 451058

---

G. MICHAEL HARVEY
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO.447465
FEDERAL MAJOR CRIMES SECTION
(202) 305-2195

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum In Opposition to Defendant's Motion to Suppress Evidence and Statements is to be served upon counsel for the defendant, Tony Axam, Esquire, this ____th day of March, 2005.

---

G. MICHAEL HARVEY
ASSISTANT UNITED STATES ATTORNEY